IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS GIACCHI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-3223 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA DEPARTMENT OF THE TREASURY INTERNAL REVENUE SERVICE, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

Smith, J.                                                                                                                                                 January 31, 2019

The plaintiff brought this action under 26 U.S.C. § 6212, seeking a tax refund and declaratory and injunctive relief relating to an ongoing dispute with the Internal Revenue Service over tax years 2000 through 2002, during which time the IRS allegedly "overbilled" him. The plaintiff previously attempted to obtain preliminary injunctive relief, but the court denied the motion after concluding that the Anti-Injunction Act, 26 U.S.C. § 7421(a), foreclosed the request.

The IRS has moved to dismiss the complaint for lack of subject-matter jurisdiction, and this motion is now ripe for decision. The IRS generally argues that the court lacks subject-matter jurisdiction because the plaintiff has not identified a valid waiver of sovereign immunity. More specifically, the IRS asserts that (1) the plaintiff cannot obtain declaratory relief because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), excepts from declaratory relief disputes concerning a plaintiff's tax liability, and (2) the plaintiff cannot establish jurisdiction in this court over a tax refund suit until he has paid his full tax liability for the relevant years under the

Supreme Court's decision in *Flora v. United States*, 362 U.S. 145 (1960)[1] and filed an appropriate administrative refund claim under 26 U.S.C. § 7422(a).

As discussed in more detail below, the court finds that the Declaratory Judgment Act forecloses the declaratory relief sought here and that the plaintiff has not satisfied the prerequisites necessary to establish jurisdiction for a tax refund suit. Therefore, the court grants the motion to dismiss and will dismiss the complaint without prejudice.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, Thomas Giacchi ("Giacchi"), filed a complaint seeking a refund and declaratory and injunctive relief against the IRS on July 30, 2018. *See* Compl., Doc. No. 1. According to the complaint, Giacchi, through counsel, submitted Forms 843 requesting abatement or refund for tax years 2000–2002 to the IRS on December 27, 2013.[2] *See id.* at ¶ 5. In January 2018, Giacchi, again through counsel, made another submission to the IRS, this time

---

[1] The Supreme Court entered this decision after granting a rehearing from the decision the court entered at *Flora v. United States*, 357 U.S. 63 (1958). For ease of reference, the court will refer to the Court's 1958 decision as "*Flora I*" and the 1960 decision on rehearing as "*Flora II*."

[2] There unfortunately appears to be an issue with Giacchi's reference to December 27, 2013 here. Giacchi appended to the complaint the Forms 843 and attached letter that he submitted to the IRS seeking an abatement for tax years 2000–2002 as Exhibit A. *See* Compl., Ex. A, Doc. No. 1-2.

Despite Giacchi alleging that he submitted the Forms 843 and the letter to the IRS on December 27, 2013, and indicating that he was supporting this statement by the documents attached as Exhibit A, the cover letter in Exhibit A is dated December 27, 2017, and the certificate of mailing is dated January 2, 2018. *See id.* at ECF pp. 2–6. Even the certificate of mailing appears to have an issue because the stamp next to the January 2, 2018 postmark states "January 2, 2017." *Id.* at ECF p. 2. As the letter is dated December 27, 2017, the court presumes that the former is correct.

In any event, Exhibit A also includes letters from Giacchi's counsel to the IRS dated December 21, 2017, and September 19, 2017, and letters from the IRS referencing correspondence from Giacchi dated September 29, 2017, and June 27, 2017. *See id.* at ECF pp. 7, 21, 25–26, 33. At bottom, the court is unable to find a 2013 submission to the IRS in Exhibit A or in any of the other voluminous materials Giacchi appended to the complaint. Therefore, the court presumes that Giacchi's reference to December 27, 2013 in paragraph 5 of the complaint is a typographical error and the date should be December 27, 2017. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206–07 (5th Cir. 1975))).

The court notes that the IRS also seems to believe that the reference to "2013" in the complaint was a typographical error. *See* Br. in Supp. of the United States' Mot. to Dismiss and Opp. to Pl.'s Mot. for a Temporary Restraining Order ("IRS Br.") at 5 ("Giacchi states that he filed an administrative claim for refund (Form 843) on December 27, 2017[.]"), Doc. No. 4-1.

including a request for a collection due process or equivalent hearing. *See id.* at ¶¶ 6–8 & Ex. B at ECF pp. 3–4. The IRS did not respond to either submission. *See id.* at ¶ 8.

Giacchi also appended to the complaint documents reflecting that he submitted payments to the IRS between June 2017 and July 2018 totaling $4,980.[3] *See id.*, Ex. C. In July 2018, Giacchi's employer received a Form 668-W notice of levy on wages, salary, and other income, which indicated that he had unpaid balances of $3,043.56, $6,937.05, and $22,199.08 for the years 2000, 2001, and 2002, respectively. *See id.*, Ex. D. Giacchi challenges that the "levy violates and is far more draconian than the IRS'[s] own collection financial standards," and "would reduce [him] to virtual poverty." *See id.* at ¶¶ 13–14.

Giacchi also challenges the amount of his unpaid balance. Specifically, he claims that the IRS erred by applying interest and penalties to his outstanding balances between April 2012 and September 2017, during which time he was undergoing bankruptcy proceedings. *See id.* at ¶ 16, Ex. E. He further alleges that "[t]he amounts claimed by IRS vary substantially, are issued from differing IRS locations, and are not only contradictory, not only inaccurate, but also especially vexing because IRS won't respond to [his] communications." *Id.* at ¶ 17. Giacchi sought declaratory relief as to the amount he still owed the IRS, a refund or credit for the payments he had already made, and injunctive relief to stay collection pending further order of the court. *See id.* at ¶ 20.

On July 31, 2018—the day after Giacchi filed the complaint and before the IRS responded to the complaint—Giacchi filed a motion for injunctive relief seeking a temporary restraining order staying the attachment the IRS had placed on his wages followed by a hearing

---

[3] Giacchi alleges that he paid a total of $4,625.00, made up of one $365 payment and twelve $355 payments. *See* Compl. at ¶ 9. However, Exhibit C to the complaint appears to include one $365 payment from June 2017 and thirteen $355 payments from July 2017 through July 2018. *See id.*, Ex. C. Regardless, this minor discrepancy does not change the court's analysis.

to continue the temporary restraining order as a preliminary injunction. *See* Mot. for Injunctive Relief, Doc. No. 2. Later that same day, the IRS filed the instant motion to dismiss for lack of jurisdiction and a response in opposition to the motion for injunctive relief, with a single brief in support of both motions. *See* Doc. Nos. 4, 5. The IRS argued that the Anti-Injunction Act barred Giacchi's demand for injunctive relief, and the tax exception to the Declaratory Judgment Act similarly barred his demand for declaratory relief. *See* IRS Br. at 1. The IRS also argued that a taxpayer cannot invoke the jurisdiction of a district court over a tax refund suit until he has paid his full tax liability for the years at issue and filed a proper administrative refund claim, which it claims Giacchi has not done. *See id* at 5.

The court held an on-the-record telephonic hearing concerning Giacchi's motion for injunctive relief on August 1, 2018, following which the court denied the motion after finding that the Anti-Injunction Act deprives the court of jurisdiction to grant the injunctive relief he sought. *See* Aug. 3, 2018 Order, Doc. No. 8. Giacchi then filed his response to the motion to dismiss for lack of jurisdiction on August 11, 2018, arguing that the court has jurisdiction to issue declaratory relief as to the amount owed and a refund of the payments he has already made, at least for the year 2000, for which he claims he has paid his full assessment. *See* Mem. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at ECF pp. 2–3, Doc. No. 10. The IRS filed a reply in further support of the motion to dismiss on August 15, 2018. *See* Doc. No. 11. The court heard oral argument on the motion on August 22, 2018. The motion is ripe for adjudication.

## II.     DISCUSSION

### A.     <u>Standard of Review – Motions to Dismiss under Rule 12(b)(1)</u>

The IRS has moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) for want of subject-matter jurisdiction. There are two types of Rule 12(b)(1) motions: facial attacks

and factual attacks. "[A] facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal citations and quotation marks omitted) (all but first alteration in original). For a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal citations omitted). Here, the IRS's motion to dismiss constitutes a facial attack, because the motion only requires the court to consider the facts set forth in the complaint and attached exhibits. In considering that attack, the court "appl[ies] the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Aichele*, 757 F.3d at 358; *see also Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff [as Federal Rule of Civil Procedure 12(b)(6)]: the court must consider the allegations of the complaint as true.").

The party asserting that the court has jurisdiction has the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case." (citations and quotation marks omitted)); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 ("It is to be presumed that a cause lies outside th[e federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" (citations omitted)). Under circumstances involving a suit against the government, jurisdiction does not lie absent "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver."

*United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (internal citations omitted). The "[p]laintiff bears the burden of showing an unequivocal waiver of immunity [and t]he waiver cannot be implied[.]" *Global Fin. Corp. v. United States*, 67 F. App'x 740, 742 (3d Cir. 2003) (internal citations and quotation marks omitted). If the plaintiff cannot establish that the United States has waived its sovereign immunity under the circumstances at hand, the defendant is entitled to dismissal under Rule 12(b)(1).

### B. Analysis

#### 1. The Court Does Not Have Jurisdiction to Issue Declaratory Relief

After carefully reviewing the complaint and Giacchi's response to the IRS's motion to dismiss, Giacchi has not sustained his burden to demonstrate that this court has jurisdiction over his demand for declaratory relief because the Declaratory Judgment Act (the "Act") undoubtedly forecloses providing any declaratory relief here. The Act specifically excepts from the issuance of declaratory relief "a case of actual controversy . . . with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986." 28 U.S.C. § 2201(a). Giacchi does not argue, nor could he, that this is a section 7428 action, which is limited to controversies around an organization's classification for tax purposes. *See* 26 U.S.C. § 7428.

Giacchi asserts that the IRS's "motion to dismiss regarding declaratory relief misrepresents (or at least misreads) the complaint. Taxpayer may or may not owe taxes above and beyond the amount already paid. What we need is a determination of how much, if any, that amount might be." Pl.'s Mem. at ECF p. 3. But a determination of how much Giacchi owes is precisely the sort of declaratory relief that the Act does not allow. Giacchi appears to believe that the Act only prohibits declarations that a taxpayer has no outstanding tax liability. However, a clear reading of the Act reflects that it prohibits declaratory relief of *any* kind in a taxpayer suit,

6

excepting certain limited circumstances not present here. Giacchi makes a broad argument that the court should hear this case because "[t]his is an actual case or controversy, and it has gone on long enough without proper judicial supervision." *Id*. The court does not doubt that this matter is an actual controversy, but the fact remains that Congress specifically excepted this type of controversy from the types of actions suitable for declaratory relief, and it is Congress' place—not Giacchi's—to decide when "proper judicial supervision" is appropriate.

### 2. The Court Does Not Have Jurisdiction Over a Tax Refund Suit

District courts and the United States Court of Federal Claims have concurrent jurisdiction over

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.[4]

28 U.S.C. § 1346(a)(1). However, that grant of jurisdiction is limited to cases in which the taxpayer has satisfied two requirements. First, the taxpayer must have paid the full assessment for the relevant year. *See Flora I*, 357 U.S. at 75 ("The foregoing study of the legislative history of 28 U.S.C. s 1346(a)(1), 28 U.S.C.A. s 1346(a)(1) and related statutes leaves no room for contention that their broad terms were intended to alter in any way the Cheatham principle of 'pay first and litigate later.'"); *Flora II*, 362 U.S. at 177 (confirming on rehearing that section 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court"). Second, a taxpayer may not sue under section

---

[4] Giacchi states that "26 U[.]S[.]C[.] §§ 6532(a)(1) and 7422(a)(1)[] give the taxpayer a right to file suit if a refund claim has not been acted on for more than 6 months." Pl.'s Mem. at 2. 26 U.S.C. § 6532(a)(1) establishes the time period applicable to a taxpayer suit under 26 U.S.C. § 7422. The court notes that there is no 26 U.S.C. § 7422(a)(1) and presumes that Giacchi is referring to 26 U.S.C. § 7422(a), which requires a taxpayer to file a claim for refund or credit with the IRS before bringing a tax refund suit. Although sections 6532(a)(1) and 7422(a) both establish restrictions on how and when a taxpayer may file a refund suit, the court believes it is more accurate to refer to section 1346(a)(1) as the statute by which Congress waived sovereign immunity to establish jurisdiction over taxpayer refund suits.

1346(a)(1) "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). The court addresses each of these requirements in turn.

    a.    <u>It is Unclear Whether Giacchi Has Paid His Full Tax Assessment for the Year 2000</u>

Although the parties agree that section 1346(a)(1) requires a taxpayer to pay his full income tax assessment before filing a refund suit, they disagree about whether Giacchi has done so here. Giacchi argues for the first time in his opposition to the IRS's motion to dismiss that he has paid his full tax assessment for the year 2000, so the court has jurisdiction to hear a refund suit for that year.[5] *See* Pl.'s Mem. at ECF p. 3. The IRS responds that Giacchi has not satisfied the full payment requirement because he has interest payments outstanding for 2000. United States' Reply Br. in Supp. of Mot. to Dismiss ("IRS Reply") at 2, Doc. No. 11.

The court must first address Giacchi's confusion around his outstanding liabilities. The July 10, 2018 wage levy notice that Giacchi's employer received lists Giacchi's unpaid balance of his assessment for the year 2000 as $3,043.56. *See* Compl., Ex. D. Giacchi argues that he has paid the IRS $4,625, which is sufficient to cover this sum, and the court therefore has jurisdiction to hear his case, at least concerning his demand for a refund for that year.[6] *See* Pl.'s Mem. at ECF p. 3 ("[A]ccording to EXHIBIT D to the complaint, the portion of the IRS claim for unpaid income tax for 2000 is $3,043.56. According to EXHIBIT C, plaintiff has paid $4,625, more than enough to fully pay the 2000 divisible portion of the claim."). But Giacchi—who, again, bears the burden of establishing that jurisdiction lies—offers no reason to believe that the remaining balance of $3,043.56 does not reflect those payments, which began over a year before

---

[5] The IRS argues that the court should not consider this argument because Giacchi raised it for the first time in his opposition to the motion to dismiss, but the court concludes that even considering this new argument, Giacchi's claims still fail.
[6] Giacchi does not argue that he paid his full tax liability for the years 2001 or 2002.

8

the wage levy notice date. According to the materials attached to the complaint, Giacchi began submitting payments to the IRS in June 2017. *See* Compl., Ex. C at ECF p. 16. As of December 11, 2017, Giacchi had an outstanding balance of $11,819.85 for tax year 2000. *See* Compl., Ex. A at ECF p. 20. Giacchi has provided no reason (or plausible allegation) to believe that the $11,819.85 figure does not include the payments between June 2017 and that date. The December 11, 2017 notice states: "If you recently made a payment that's not reflected in the amount you owe, subtract your recent payment from the amount due. If this results in a credit, we'll send you a refund check." *Id*. But even assuming the $11,819.85 figure did not include *any* of the June 2017–November 2017 payments (which totaled $2,140, $365 in June 2017 and $355 per month from July 2017–November 2017), his outstanding balance as of December 11, 2017 would still have been $9,679.85.[7]

Between December 20, 2017, and June 20, 2018, Giacchi submitted seven additional payments of $355 each, for a total of $2,485 ($4,625 when combined with the June 2017–November 2017 payments). Regardless of whether his true balance as of December 11, 2017 was $11,819.85 or $9,679.85, the $3,043.56 assessed unpaid balance for the year 2000, as indicated in the wage levy notice, is therefore actually less than what one would expect Giacchi to still owe. Certainly, payments totally $4,625 are insufficient to satisfy $11,819.85 or $9,679.85 worth of tax liability.

---

[7] The December 11, 2017 notice itself seems to reflect that the amount owed reflected at least one of these payments, as the notice states, "We applied $355 of your 2002 civil penalty overpayment to an amount owed for 2000. As a result, the amount you owe for December 31, 2000 is $11,819.85." Compl., Ex. A at ECF p. 20. Giacchi's counsel's December 27, 2017 letter to the IRS recognizes that the IRS applied this payment to the unpaid balance for the year 2000:

> IRS correspondence indicates an overpayment for 2002. That assertion and the $62826.86 assertion [as to Giacchi's total outstanding balance] are mutually contradictory, as well as confusing. What actually happened, we believe, is that IRS took an installment payment of $355 that was initially intended for 2002, and applied it to 2000. Request is made for IRS to account for the additional monthly installment payments made to date under the pending Form 9465 request.

Compl. Ex. A at ECF p. 4.

Giacchi also asserts that the IRS is incorrect that he has any outstanding liability for the year 2000 because its proof of claim in his 2012 bankruptcy proceedings states that he owed $0.00 for the underlying tax assessment for that year. *See* Compl., Ex. E at ECF p. 4. As the IRS points out, however, Giacchi ignores that the year 2000 entry on the IRS's proof of claim also includes $5,598.17 in penalties and $5,692.85 in interest. *See id.*; IRS Reply at 2.[8]

The court therefore agrees with the IRS that Giacchi has some form of outstanding liability, in the form of either penalties, interest, or both, for the year 2000. This determination unfortunately does not end the analysis. The IRS argues that Giacchi's outstanding interest means that he has not paid his full tax liability for the year 2000, and therefore jurisdiction over his tax refund suit does not lie. *See* IRS Reply at ECF p. 2. Although Giacchi did not address this argument, the court must consider whether the IRS is correct that *Flora II* requires full payment of any penalties and interest, in addition to the underlying tax, for jurisdiction to lie.

Other courts that have considered whether the term "assessment" includes penalties and interest have come to different conclusions. In *Flora I*, the Court held that a taxpayer was required to pay the full tax assessment before bringing a tax refund suit under section 1346(a)(1) without deciding whether that assessment included interest and penalties. *See* 357 U.S. at 76. Two years later, the Court confirmed on rehearing in *Flora II* "that full payment of the assessment is a jurisdictional prerequisite" to a tax refund suit, but indicated in a footnote that section 1346(a)(1) "lends itself to a construction which would permit suit for the tax after full payment thereof without payment of any part of the interest." 362 U.S. at 171 n.37. The Third Circuit had an opportunity to assess this footnote in *Freck v. I.R.S.*, 37 F.3d 986, 993–94 (1994). In that case, the Third Circuit evaluated whether the IRS can unilaterally decide how partial

---

[8] Giacchi argues that it was improper for the IRS to assess interest against him during the bankruptcy proceedings. *See* Compl. at ¶ 16. Putting aside whether that is correct, the proof of claim shows that the penalties and interest on the 2000 tax accumulated *before* the bankruptcy proceedings. *See id.*, Ex. E at ECF p. 4.

10

payments are applied to the taxpayer's outstanding principal, interest, and penalty liabilities for various tax years. *Id*. at 989. Freck argued that under *Flora II*, her tax refund suit could be heard upon payment of the underlying principal—even if the corresponding interest and penalties were unpaid—and she should be allowed to allocate her partial payments to satisfy the principal payments for each of the relevant years (rather than the principal, interest, and penalty payments for the earliest years, as the IRS had applied them) so that she could bring a tax refund suit for all the years in dispute. *Id*. at 993–94. In a paragraph outlining Freck's position, the Third Circuit stated:

> if Freck had been given a chance to allocate the payment the district court found voluntary . . . IRS would have had to apply the [partial payments] to principal for all three years instead of first to the interest, penalties and principal that had accrued for 1978. The district court would then have had jurisdiction over [both the tax years for which the underlying tax assessment was fully satisfied.]

*Id*. at 994. The Third Circuit ultimately remanded the case to the district court to determine whether Freck had had the opportunity to instruct the IRS on how to allocate the voluntary payments, without directly stating whether Freck's jurisdictional argument was correct. *Id*. at 995.

Although *Freck* lends itself to the interpretation that full payment need not include interest and penalties, in the years since *Freck*, the District of New Jersey has twice explicitly held that a taxpayer must pay interest before filing a refund suit. *See Lamb v. United States*, Civ. A. No. 13-6526-PGS-DEA, 2014 WL 3547737, at *3 (D.N.J. Jul. 24, 2014) ("[A] taxpayer may not file a suit in district court until he or she has paid the entire assessment, including interests and penalties[.]"); *Small v. Internal Revenue Serv. Ctr.*, No. 99-2603-JBS, 1999 WL 1315647, at *1 (D.N.J. Dec. 6, 1999) ("[T]he taxpayer must fully pay the tax assessment, including interest and penalties[.]"). Both of those cases cited to the *Flora I* decision and did not

11

discuss the footnote in *Flora II* concerning whether outstanding interest must be paid for jurisdiction to lie. Neither decision discussed *Freck*. The Court of Federal Claims, also citing the *Flora I* decision, came to a similar conclusion when it held that "to invoke this Court's jurisdiction in a tax refund suit, a plaintiff must have paid all taxes, penalties, and interest in full and have filed a refund claim with the IRS for the amount of tax at issue." *Wade v. United States*, 138 Fed. Cl. 276, 278 (2018).

The IRS cites to two additional cases for the proposition that a plaintiff must pay all accrued interest before filing a tax refund suit in federal court, but it is unclear whether the court evaluated the key issue in either case. *See* IRS Br. at 5. In *United States v. Dalm*, the Supreme Court held that a tax refund suit filed in 1984 was untimely when the taxpayer paid the underlying tax liability in 1976 and the penalties and interest in 1977, but did not discuss whether the time to file a refund claim began to run in 1976 or 1977. *See* 494 U.S. 596, 601–02 (1990). Similarly, in *Theodore A. Pride & Associates, Inc. v. United States*, the court held that a taxpayer had not met the jurisdictional requirements because he had "an unpaid balance in the amount of $42,218.51," but did not specify whether that balance included interest or penalty charges. *See* No. C.A. 97-762, 2001 WL 177064, at *4 (E.D. Pa. Jan. 18, 2001). Considering these seemingly conflicting decisions, the court recognizes the confusion around the full payment issue. Nonetheless, this court ultimately need not decide the issue here, because Giacchi did not meet the second jurisdictional requirement insofar as he did not timely file a proper refund claim with the IRS.

    b.  <u>Giacchi Did Not Timely File a Proper Administrative Refund Claim</u>

"[U]nless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any

court." *Dalm*, 494 U.S. at 602 (citing *United States v. Kales*, 314 U.S. 186, 193 (1941)).

Regarding the time limit for filing a refund with the IRS, a taxpayer must file a

> [c]laim for credit or refund of any overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return . . .within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

26 U.S.C. § 6511(a).

The IRS's proof of claim in Giacchi's 2012 bankruptcy action shows that his outstanding tax liability for the year 2000, not including penalties and interest, was $0.00. *See* Compl., Ex. E at ECF p. 4. Thus, Giacchi must have paid his 2000 tax assessment by the notice date of the petition, April 2, 2012, at the very latest. According to the December 27, 2017 letter Giacchi's counsel submitted to the IRS, Giacchi engaged an accountant to file a tax return for the year 2000 in 2005. *See id.*, Ex. A at ECF p. 5. But Giacchi did not file a request for abatement with the IRS until December 2017, at least five years after he paid the underlying tax assessment and twelve years after he filed the return. *See id.*, Ex. A. Undoubtedly, the administrative refund claim was untimely. Giacchi cannot have it both ways; either he was required to pay his full balance, including penalty and interest—which he has not done—before suing in this court, or his time to file an administrative claim for a refund began to run in 2012, at the very latest. Either way, Giacchi has not established that this court has jurisdiction to hear his refund claim.[9]

Even if Giacchi had timely filed his request for abatement, what he submitted was inadequate to qualify as an administrative claim for a refund. Under 26 U.S.C. § 7422(a), the

---

[9] Even if the court is incorrect that the December 27, 2013 date was a typo (and all the materials submitted to date suggest it is not), Giacchi's claim still fails. *See supra* at 2, n.1. Although the IRS's proof of claim makes clear that Giacchi's 2000 tax was assessed in 2004 and paid by April 2012, Giacchi has pled no facts that allow the court to conclude when within that time period he paid the assessment. Notably, Giacchi left the section of the Forms 843 for date of payment blank. *See* Compl., Ex. A at ECF p. 11. Giacchi bears the burden of establishing that jurisdiction lies, and absent an allegation that he paid the assessed tax later than December 27, 2011, the court cannot conclude that the administrative claim was timely, even if filed in December 2013. *See supra* at 4.

taxpayer's administrative refund claim must be "duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." The requirements for an IRS administrative refund claim make clear that "[t]he statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." 26 C.F.R. § 301.6402–2(b). Here, the relevant Forms 843 appended to the complaint are not signed. Although the attached letter from Giacchi's counsel includes a description of the potential grounds for a refund, those grounds were not "verified by a written declaration that is made under the penalties of perjury." *Id*. Giacchi also did not sign the appended power of attorney that was supposed to designate counsel as his representative before the IRS.[10] As such, Giacchi's counsel's submission to the IRS was not a proper administrative refund claim, as required to invoke the jurisdiction of this court.

### III. CONCLUSION

The court recognizes that Giacchi is confused about how the IRS has calculated his outstanding tax assessment. But that confusion, even if justified, cannot create jurisdiction where it does not otherwise lie. For a district court to exercise jurisdiction over a tax refund suit, a plaintiff must both pay the full value of the tax and timely file a proper administrative refund

---

[10] The court notes that Giacchi included in Exhibit B to the complaint signed copies of the Forms 843 and power of attorney. *See* Compl., Ex. B at ECF pp. 14–18. The complaint describes Exhibit B as "Plaintiff's submission to IR [sic] of January 2, 2018, protesting denial of due process together with all the items submitted in December, and including the Postmaster's certificate of mailing." Compl. at ¶ 7. The signed forms, dated December 29, 2017, are included immediately after the copy of the December 27, 2017 letter. The court interprets the complaint's description of the materials to mean that Giacchi's counsel substituted the signed versions of the forms for the versions attached to the December 27, 2017 letter when he resubmitted the materials as part of his January 2, 2018 submission. The complaint identified Exhibit A—with the unsigned forms—and not Exhibit B, as Giacchi's "Forms 843 requesting abatement (or refund) for each of tax years 2000, 2001 and 2002 . . . ." *Id*. at ¶ 5. The court expresses some concern about the propriety of Giacchi's counsel substituting the forms but declines to fully assess the issue because the refund claim is untimely regardless.

claim. If the IRS's interpretation of the relevant case law is correct, Giacchi has not met the first requirement because he has not fully paid the assessment. If the IRS's interpretation is incorrect, Giacchi has not met the second requirement because his time to file an administrative refund claim began to run when he paid the underlying tax, not the corresponding penalties and interest. Either way, Giacchi has not met his burden to show that jurisdiction lies in this court, and the complaint is dismissed.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.